UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FORTINO GONZALEZ,

    Petitioner,

v.

MARY BERGHUIS,

    Respondent.

_____/

Case No. 1:13-cv-179

Hon. Robert J. Jonker

**REPORT AND RECOMMENDATION**

Fortino Gonzalez is a prisoner currently incarcerated at a Michigan state correctional facility. This matter is now before the Court on Gonzalez' petition for writ of habeas corpus filed by his counsel pursuant to 28 U.S.C. § 2254.

**I.**    **Background**

Petitioner lived in Chicago, Illinois. *See* Trial Transcript II (docket no. 15, p. 181). On August 6, 2009, petitioner and two other men drove to Allegan County, Michigan, where they entered the house of Leon Villa to collect money petitioner alleged Villa owed him. *Id*. at pp. 108-109. Petitioner and the other men held Mr. Villa and another occupant, Nora Hernandez, at gun point, and forced them to drive to a bank to withdraw the money. *Id*. at pp. 113-115. Instead of driving to a bank, Mr. Villa drove to the Secretary of State's Office and ran inside. *Id*. Ms. Hernandez was released. *Id.*

A little more than one week later, petitioner and Omar Garcia drove from Chicago to Mr. Villa's house to get the money. *Id*. at pp. 209. They left Chicago at "around midnight" and

arrived in Michigan on the morning of August 14, 2009. *Id*. at pp. 209-12. After they arrived in Michigan, petitioner retrieved a long rifle and a 9mm pistol from a hidden location about 1/2 mile from Mr. Villa's house. *Id*. at pp. 210-11. When they arrived at Mr. Villa's house, the door was locked. Petitioner had a sledgehammer and told Garcia to "[h]it that door" with it. *Id*. at pp. 214-15. Garcia put the pistol in his waistband and hit the door twice with the sledgehammer to get it open. *Id*. at pp. 214-16. When they entered the house, Garcia took the pistol out of his waistband. *Id*. at p. 216. Mr. Villa was in a room with a shotgun pointed towards Garcia, who shot his pistol once into the room. *Id*. at pp. 216-17. The pistol jammed. *Id*. at pp. 216-18. At that point, petitioner shot the rifle "[f]ive or six times." *Id*. at pp. 218-19. After petitioner was done shooting, he told Garcia "Let's go. . . he's on the floor." *Id*. at p. 220. Mr. Villa died the next day. *Id*. at p. 17-18. After an autopsy, it was determined that Mr. Villa died of one or two gunshot wounds. *Id*. at 44-45.

Petitioner was charged in two separate criminal cases involving the victim, with his proceedings consolidated for a jury trial in the Allegan County Circuit Court. In the case arising out of events occurring on August 6, 2009, petitioner was convicted of armed robbery, M.C.L. § 750.529; two counts of unlawful imprisonment, M.C.L. § 750.349b; two counts of assault with a dangerous weapon, M.C.L. § 750.82; assault with intent to rob while armed, M.C.L. § 750.89; and carrying a firearm during commission of a felony, M.C.L. § 750.227b. *People v. Gonzalez*, 2011 WL 4375080 at *1 (Mich. App. Sept. 20, 2011) (docket no. 298710). The trial court sentenced petitioner to 17-1/2 to 50 years in prison for the armed robbery and assault with intent to rob while armed convictions; 10 to 15 years for the unlawful imprisonment convictions; 2-1/2 to 4 years for the assault with a dangerous weapon convictions; and a consecutive two year sentence for the felony-firearm conviction. *Id*.

In the case arising out of events occurring on August 14, 2009, petitioner was convicted of first-degree murder, M.C.L. § 750.316; first-degree home invasion, M.C.L. § 750.110a(2); and carrying a firearm during the commission of a felony, M.C.L. §750.227b. *Id*. (docket no. 298709). The trial court sentenced petitioner to life in prison for the first-degree murder conviction and 13 to 20 years for the first-degree home invasion conviction, an a consecutive two year sentence for the felony-firearm conviction. *Id*.

Petitioner, through counsel, raised five issues in his direct appeal to the Michigan Court of Appeals:

I. Whether this Court must vacate [petitioner's] convictions because the evidence of his participation even as an aider and abettor was legally insufficient.

II. Whether [petitioner] is entitled to resentencing where the trial court erred in departing upward from the sentencing guidelines without substantial and compelling reasons.

III. Whether [petitioner's] State and Federal Due Process Rights to be sentenced based on accurate information and with the effective assistance of counsel were denied.

IV. Whether [petitioner's] rights under the State and Federal Constitutions to be free from unreasonable search and seizure were denied where the State Police did not have probable cause or a reasonable suspicion to stop the car [petitioner] was a passenger in, and the trial court erred in denying [petitioner's] motion to suppress.

V. Whether [petitioner's] convictions for both armed robbery and assault with intent to rob while armed violate the State and Federal double jeopardy clauses where under the facts of this case, assault with intent to rob while armed is a necessarily included lesser offense of armed robbery.

Petitioner's Appellate Brief (docket no. 22).

The Michigan Court of Appeals affirmed the convictions related to the August 6th crimes (docket no. 298710) "except for the assault with intent to rob while armed conviction, which we vacate." *Id*. In addition, the Michigan Court of Appeals affirmed the convictions related to the August 14th crimes (docket no. 298709), but remanded "for resentencing on the first-degree home invasion conviction." *Id*. As the appellate court explained:

> Here, the trial court did not articulate any reasons for [an upward sentencing] departure, nor did the court acknowledge that it was departing from the guidelines. Moreover, the court did not consider the two cases against defendant to be consolidated for sentencing. Rather, the court first sentenced defendant for the cause number involving the August 14 crimes (Docket No. 298709), and then sentenced defendant for the cause number involving the August 6 crimes (Docket No. 298710). Thus, it appears from the record that the trial court recognized the cases were separate, but mistakenly imposed an upward departure sentence for first-degree home invasion. The imposition of a departure sentence was error, absent an articulation of any reason for the departure. We therefore remand for resentencing on defendant's first-degree home invasion conviction, or for articulation of substantial and compelling reasons warranting an upward sentencing departure for that conviction.

*Gonzalez*, 2011 WL 4375080 at *4.

Petitioner raised the same five issues in his application for leave to appeal to the Michigan Supreme Court *See* Application for leave (docket no. 23). The Michigan Supreme Court denied his application for leave to appeal on March 5, 2012. *People v. Gonzalez*, 491 Mich. 854, 808 N.W.2d 783 (2012).

Gonzalez' counsel filed a habeas petition on February 15, 2013. Petition (docket no. 1). The petition was not on the form provided by the Court and did not conform with the requirements of Rule 2 of the Rules Governing Section 2254 Cases in the United States District Courts that "[t]he petition must: (1) specify all grounds for relief available to the petitioner; (2) state the facts supporting each ground . . ." Rather, the petition stated that "[a]s set forth in the

4

accompanying memorandum, Petitioner Fortino Gonzalez remains detained unconstitutionally by Respondent in contravention of his Fourth, Fifth, and Fourteenth Amendment rights under the United States Constitution." The two issues raised appear as arguments in the "Memorandum of Law":

I. Petitioner's Fourth Amendment right to be free of unreasonable search and seizure was violated where his vehicle was stopped absent reasonable suspicion or probable cause and he was arrested.

II. Petitioner's conviction for first degree (premeditated) murder should be vacated and the sentence of mandatory life in prison set aside and the Court should thereafter rule that there is no sufficient evidence of felony murder either.

*See* Petition (docket no. 1, PageID.23, 26).

Petitioner's Habeas Issue I appears to be the Fourth Amendment claim raised in the Michigan Court of Appeals as Issue IV. However, petitioner's Habeas Issue II does not track with the sufficiency of the evidence claims raised in the Michigan Court of Appeals because: (1) the issue raised in the present habeas case only presents an argument with respect to the premeditation element of first degree murder, while the claim presented to the state appellate court involved "the evidence of [petitioner's] participation . . . as an aider and abettor" on first degree premeditated murder, as well as the convictions for assault with a dangerous weapon on Hernandez, unlawful imprisonment of Villa and Hernandez, and first-degree home invasion) (*see Gonzalez*, 2011 WL 4375080 at *1-*4); and, (2) the issue appears to interject a new claim regarding the sufficiency of the evidence with respect to felony murder, a claim which was not raised in the state court appeal.

5

At trial, the jury was instructed as to both first degree murder[1] and first degree felony murder[2], and found him guilty on both counts. Trial Trans. VI (docket no. 19, pp. 4-5). At sentencing, the prosecutor pointed out that "this file alleges murder in the first degree and felony murder" and "[i]t's my understanding that to impose a mandatory life sentence in each of those counts violates the provisions, principles of double jeopardy" citing *People v. Bigelow*, 229 Mich. App. 218, 581 N.W. 2d 744 (1998). Sent. Trans. at p. 9 (docket no. 20). *See, e.g., Smith v. Woods*, No. 2:15-cv-73, 2016 WL 5899000 at *2 (W.D. Mich. Oct. 11, 2016) ("Petitioner is correct that convictions for both first-degree murder and felony murder, arising from the death of a single victim, would violate double jeopardy," citing *Bigelow*).

To avoid double jeopardy with respect to petitioner's convictions in this case, the prosecutor asked "that the Court impose a sentence consistent with that case law, which indicates that you can only impose -- as I understand it -- one mandatory life term. Apparently, under an alternate theory of either first degree murder or felony murder." Sent. Trans. at p. 9. The trial court agreed with the prosecutor:

> In respect to file number 09-16480 [the August 14th murder], as to counts one and three, that a conviction of first degree murder be entered under the alternate theories of premeditated murder and felony murder, for the rest of your natural life.

---

[1] "[T]hat the Defendant caused the death of Leon Villa . . . that the Defendant intended to kill Leon Villa . . . that the intent to kill was premeditated . . . that the killing was deliberate . . . [t]hat the killing was not justified, excused, or done under circumstances that reduce it to a lesser crime." Trial. Trans. V (docket no. 18, p. 87).

[2] "[T]hat the Defendant cause the death of Leon Villa . . . that the Defendant had one or -- one of these three states of mind, he intended to kill or he intended to do great bodily harm to Leon Villa or he knowingly created a very high risk of death or great bodily harm knowing that death or such would be a likely result of his actions . . . that when he did the act that caused the death of Leon Villa, the Defendant was committing or attempting to commit or helping someone else to commit the crime of home invasion first degree." Trial Trans. V at p. 89.

*Id*. at p. 16.

As part of his state appeal, petitioner contested the sufficiency of the evidence of premeditation raising the following argument:

> It makes no sense that Gonzalez would have Garcia drive him from Chicago to Michigan to kill Villa, when it was clear from the prior visit, that his sole purpose was to collect money from Villa. This alone negates the premeditation and deliberation necessary for a first degree murder conviction.

Appellate Brief at p. 26 (docket no. 22). The sufficiency of the evidence to support a felony murder conviction was neither raised in petitioner's appellate brief nor addressed by the appellate court. In this regard, the Michigan Court of Appeals addressed the issue "that insufficient evidence of intent and deliberation exists to sustain his conviction of first-degree premeditated murder," *Gonzalez*, 2011 WL 4375080 at *3.

Because insufficient evidence to a support felony murder conviction was not raised in the state courts, this claim is unexhausted for purposes of federal habeas review. As a general rule, a habeas petition containing unexhausted claims should be dismissed without prejudice. *See Rose v. Lundy*, 455 U.S. 509, 518-20 (1982). However, the Court concludes that petitioner's cryptic reference to the felony murder conviction, i.e., "that there is no sufficient evidence of felony murder either," and counsel's failure to address the merits of this issue beyond a bald assertion of error, did not plead an unexhausted claim which could serve as the basis for a dismissal without prejudice under *Rose v. Lundy*. Accordingly, the Court does not recognize counsel's unsupported claim of error regarding felony murder as part of the habeas petition pending before the Court.

7

## II.     Standard of review under 28 U.S.C. § 2254

Petitioner seeks relief under 28 U.S.C. §2254, which provides that "a district judge shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." Before petitioner may seek such relief in federal court, he must first fairly present the substance of his claims to all available state courts, thereby exhausting all state remedies. *Picard v. Connor*, 404 U.S. 270, 277-78 (1981); *Clemmons v. Sowders*, 34 F.3d 352, 354 (6th Cir. 1994); *see* 28 U.S.C. §2254(b)(1)(A). In the present case, petitioner has exhausted his state remedies with respect to his habeas claims.

Where the state court has adjudicated a claim on its merits, the federal district court's habeas corpus review is limited by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which provides in pertinent part that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. 86, 101-102 (2011). The AEDPA "imposes a

8

highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 776, 773 (2010) (internal quotation marks and citations omitted). This deferential standard "requires petitioner to show 'the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing [Supreme Court precedent] beyond any possibility for fairminded disagreement.'" *Blackmon v. Booker*, 696 F.3d 536, 538 (6th Cir. 2012), quoting *Harrington*, 562 U.S. at 103. Thus, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington*, 562 U.S. at 101 (internal quotation marks omitted).

Under the "contrary to" clause of § 2254(d)(1), "a federal habeas court may grant the writ only if the state court arrived at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decided the case differently than the Supreme Court has on a set of materially indistinguishable facts." *Jalowiec v. Bradshaw*, 657 F.3d 293, 301 (6th Cir. 2011), citing *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). Under the "unreasonable application" clause of § 2254(d)(1), "a federal court may grant the writ only if the state court identified the correct governing legal principle from the Supreme Court's decisions but unreasonably applied that principle to the facts of the petitioner's case." *Id.* A court may not issue a writ of habeas corpus "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411. Rather, to grant habeas relief, the state court's application of the law must be found to be "objectively unreasonable." *Id.* at 409. "It bears repeating that even a strong case for relief does not

9

mean the state court's contrary conclusion was unreasonable." *Harrington*, 562 U.S. at 102. "If this standard is difficult to meet, that is because it was meant to be." *Id.*

A determination of a factual issue by a state court is presumed to be correct. 28 U.S.C. § 2254(e)(1). A habeas petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence that the state court's determination was erroneous. *Magana v. Hofbauer*, 263 F.3d 542, 546-47 (6th Cir. 2001). The presumption of correctness accorded to a state court's findings of fact on federal habeas review also applies to the factual findings of a state appellate court based on the state trial record. *Brumley v. Winegard*, 269 F.3d 629 (6th Cir. 2001).

### III.   Discussion

#### A.   Unreasonable search and seizure in violation of the Fourth Amendment (Issue I)

Petitioner contends that his Fourth Amendment right to be free from unreasonable search and seizure was violated during his traffic stop and subsequent arrest. The Fourth Amendment, applicable to the states through the Fourteenth Amendment, protects "[t]he right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures." U.S. Const. Amend. IV. As a general rule, state prisoners are precluded from federal habeas corpus relief on the basis of a Fourth Amendment claim. *See Stone v. Powell*, 428 U.S. 465, 482 (1976) ("where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial").

Here, petitioner received an opportunity for full and fair litigation of the search and seizure. Following testimony from the arresting officer, as well as arguments from the prosecutor and defense counsel, the trial court denied petitioner's motion to suppress:

> Well, whether or not the police here -- that the -- the criteria necessary to make this stop under the circumstances has to be looked at on the basis of whether they had reasonable suspicion of ongoing criminal activity. And in doing that, you've got to look at the totality of the circumstances.
>
> The police at this time had an emergency tone or call -- whichever -- from a residence or an address at least, that they had investigated approximately a week before for two very serious crimes, armed robbery and a home invasion -- or a kidnapping, excuse me -- not a home invasion.
>
> They were given a description of the individuals involved in that, the vehicle they drove, and the description of the individuals . . .
>
> \* \* \*
>
> [W]here detective Mathis first saw the vehicle, this would be a reasonable route for somebody to take if they were going to go back to Illinois. And they would -- there may be other routes. I'm not saying there aren't. But it's a reasonable way for them to go and the quickest and shortest way. And he sees this vehicle driving southbound on M-40, which would again, be a reasonable route to follow if I were going to go back to Illinois.
>
> It's a small -- I always thought compact vehicles were always small, but it's been described as a "small, compact vehicle". But at any rate, a four door, it fits that part of it. It's got an Illinois license plate on the front, which as I understand it, based on the testimony, Illinois requires a front license plate. It's in reasonable -- or you know, a fairly short distance that he sees this vehicle -- from the crime. And again, I said, in the Court's opinion, taking judicial notice of the roads and highways in this county that would be in the Courts' opinion a reasonable way to get back to Illinois.
>
> Now, they are getting -- they got a call -- the police, that is -- from the same residence or place where they had investigated a serious crime about a week prior. And this time they are told that the home was broken into and somebody was shot. That's a reasonable basis on which for them to conclude, in this Court's opinion, that there was criminal activity going on.

> The description of the individual involved, generally, fit the description of those individual -- or at least some of the individuals, generally, involved in the August 6th incident.
>
> And then based on the information that the caller indicated to 911, it was the same people involved in the prior incident of August 6th. So, you know, when you get a look at -- when you look at whether or not the stop was reasonable, you've got to use some common sense. And it seems to me that with all those factors that are the same or similar to those people involved in the incident of August 6, that common sense and every day experience tells you that this is probably the people that were there a week ago and I ought to make a stop, seeing that they say somebody was shot.
>
> So your motion to suppress is denied in toto. The Court is satisfied that this was an appropriate and reasonable thing for the police to do.

Motion Trans. (docket no. 13, pp. 30-32).

Similarly, the Michigan Court of Appeals affirmed stating:

Defendant next argues that the trial court erred in denying his motion to suppress. We review for clear error a trial court's findings of fact in a suppression hearing and review de novo its ultimate decision on a motion to suppress. *People v. Hyde*, 285 Mich.App 428, 438; 775 NW2d 833 (2009). The stop of defendant's vehicle implicates his right to be free from unreasonable searches and seizures. *People v. Steele*, -- Mich.App -- ; -- NW2d -- (Docket No. 299641, issued April 14, 2011), slip op at 3.

> Both the United States and Michigan Constitutions guarantee the right against unreasonable searches and seizures. US Const, Am IV; Const 1963, art 1, § 11; *People v. Kazmierczak*, 461 Mich. 411, 417; 605 NW2d 667 (2000) . . . . However, in *Terry v. Ohio*, 392 U.S. 1, 21, 30-31; 88 S Ct 1868; 20 L.Ed.2d 889 (1968), the United States Supreme Court held that the Fourth Amendment permits police to make a brief investigative stop (a "*Terry* stop") and detention of a person if the officer has a reasonable, articulable suspicion that criminal activity is afoot. The police may also make a *Terry* stop and brief detention of a person who is in a motor vehicle if the officer has a reasonable, articulable suspicion that the person is engaged in criminal activity. *People v. Oliver*, 464 Mich. 184, 192; 627 NW2d 297 (2001).

> In determining reasonableness, the court must consider whether the facts known to the officer at the time of the stop would warrant an officer of reasonable precaution to suspect criminal activity. *Terry*, 392 U.S. at 21-22. "The reasonableness of an officer's suspicion is determined case by case on the basis of the totality of all the facts and circumstances." *People v. LoCicero* (After Remand), 453 Mich. 496, 501-502; 556 NW2d 498 (1996). "[I]n determining whether the totality of the circumstances provides reasonable suspicion to support an investigatory stop, those circumstances must be viewed 'as understood and interpreted by law enforcement officers, not legal scholars ...' " *Oliver*, 464 Mich. at 192, quoting *People v. Nelson*, 443 Mich. 626, 632; 505 NW2d 266 (1993). An officer's conclusion must be drawn from reasonable inferences based on the facts in light of his training and experience. *Terry*, 392 U.S. at 27. The United States Supreme Court has said that deference should be given to the experience of law enforcement officers and their assessments of criminal modes and patterns. *United States v. Arvizu*, 534[US] 266, 273; 122 S Ct 744; 151 L.Ed.2d 740 (2002); *Oliver*, 464 Mich.App 196, 200. Fewer foundational facts are necessary to support a finding of reasonableness when moving vehicles are involved than if a house or home were involved. *Oliver*, 464 Mich. at 192. [*Steele*, -- Mich.App at -- , slip op at 3-4.]

In this case, it was permissible for the police to make a *Terry* stop and briefly detain the individuals who were in the motor vehicle if they had a reasonable, articulable suspicion that the individuals were engaged in criminal activity. *Steele*, -- Mich.App at --, slip op at 3. "There is no bright line rule to test whether the suspicion giving rise to an investigatory stop was reasonable, articulable, and particular." *Nelson*, 443 Mich. at 635. However, "[c]ommon sense and everyday life experiences predominate over uncompromising standards." *Id.* at 635–636.

Here, the trial court found that the police received an emergency tone from the same address where an armed robbery and kidnapping or abduction occurred one week earlier. As a detective was approaching the scene on a road which would be a reasonable route to return to Illinois, he saw a vehicle matching the description of the suspect vehicle from the earlier incident, driven by an individual matching the description of the suspects from the earlier incident. The trial court's findings of fact were supported by the record and were not clearly erroneous. *Hyde*, 285 Mich.App at 438. Considering the totality of the circumstances, the facts conveyed by the detective to the other officers at the time of the stop "formed a solid basis upon which [the police] had a reasonable suspicion of criminal activity to justify the *Terry* stop." *Steele*, ––– Mich.App at ––––, slip op at 3–4. The trial court properly denied defendant's motion to suppress, because the stop of defendant's vehicle was justified

where, considering the totality of the circumstances, the police had a reasonable suspicion that criminal activity was afoot.

*Gonzalez*, 2011 WL 4375080 at *5-6.

The record reflects that petitioner received an opportunity for a "full and fair litigation" of his Fourth Amendment claim. Accordingly, petitioner is not entitled to relief on this claim.

### B.   Insufficient evidence to support petitioner's first degree premeditated murder conviction (Issue II)

Finally, petitioner contends that there was insufficient evidence to support the first degree premeditated murder conviction. In *In re Winship*, 397 U.S. 358 (1970), the Supreme Court held that Fourteenth Amendment's Due Process Clause protects a criminal defendant against conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *Winship*, 397 U.S. at 364. Under *Jackson v. Virginia*, 443 U.S. 307 (1979), sufficient evidence supports a conviction if "after viewing the evidence in light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319 (emphasis added). In determining whether sufficient evidence exists to support a conviction, the reviewing court must presume that the trier of fact resolved conflicting inferences of fact in favor of the prosecution, and must defer to that resolution. *Wright v. West*, 505 U.S. 277, 296-97 (1992). Finally, because both the *Jackson* standard and AEDPA apply to petitioner's claims, "the law commands deference at two levels in this case: First, deference should be given to the trier-of-fact's verdict, as contemplated by *Jackson*; second, deference should be given to the Michigan Court of Appeals' consideration of the trier-of-fact's verdict, as dictated by AEDPA." *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir.2008).

In denying petitioner's motion for directed verdict, the trial judge addressed the issue of premeditation and deliberation as follows:

> Well, as to the open charge of murder in respect to -- you need premeditation and deliberation. As was point [sic] out, at least at this point, again keeping in mind what the standards are, viewing the evidence in a light most favorable to the prosecution would a rational trier of fact find beyond a reasonable doubt that the prosecution sufficiently established that element as to premeditation and deliberation. As pointed out and the evidence fully supports it, testimony that Garcia and [petitioner] drive from Chicago with weapons and a sledgehammer. And it was a place they had visited before, where frankly, to be in common layman's terms, they were duped the week before. They got fooled.
>
> And it might engender -- not only the fact that apparently there was a debt they were trying to collect -- it might engender a little more animosity than usual.
>
> They enter the home in the early morning hours with loaded weapons and a sledgehammer. And there were some words or shouting going on before, apparently, any shots were fired. I think it's -- there's evidence there. And a result, Mr. Villa, the decedent, was struck and killed or he died as a result of his wounds. That, you know, there's no set period of time in respect to deliberation. You know, you only need sufficient time to give it a second look. And it seems to me, taking all of those circumstances that have been -- that have been put into evidence at this point in a light most favorable to the prosecution, the Court is satisfied that the jury could conclude beyond a reasonable doubt that the elements of premeditation and deliberation were certainly apparent here, if they want to believe that testimony. So your motion is denied.

Trial Trans. IV (docket no. 17, pp. 223-25).

Similarly, the Michigan Court of Appeals found that petitioner's conviction was supported by sufficient evidence under state law:

> Defendant next argues that insufficient evidence of intent and premeditation and deliberation exists to sustain his conviction of first-degree premeditated murder. First-degree murder requires proof that the defendant had an intent to kill. *People v. Herndon*, 246 Mich.App 371, 386; 633 NW2d 376 (2001); MCL 750.316(1)(a). "To prove first-degree premeditated murder, the prosecution must establish that the defendant intentionally killed the victim and that the act of killing was premeditated and deliberate." *People v. Mette*, 243 Mich.App 318, 330; 621 NW2d 713 (2000). Premeditation may be established by the defendant's actions before and after the

15

> crime. *People v. Plummer*, 229 Mich.App 293, 300; 581 NW2d 753 (1998). Premeditation, deliberation, and intent may be inferred from all the facts and circumstances. *Id*. at 301. Both premeditation and deliberation "require sufficient time to allow the defendant to take a second look." *People v. Abraham*, 234 Mich.App 640, 656; 599 NW2d 736 (1999) (internal quotation omitted). Premeditation and deliberation may be established by facts related to "(1) the prior relationship of the parties; (2) the defendant's actions before the killing; (3) the circumstances of the killing itself; and (4) the defendant's conduct after the homicide." *Id*. (quotation omitted).
>
> The evidence viewed in a light most favorable to the prosecution supports a finding of premeditation, deliberation, and intent to kill. The testimony established that defendant and Garcia were together in Chicago, and that defendant had the idea to return to Michigan to retrieve guns. After retrieving the guns, defendant told Garcia that they were going to Villa's house. The two forced their way into Villa's house, and defendant fired a gun at Villa while wearing latex gloves (one of which contained DNA that matched defendant's DNA profile). After the shooting, defendant fled the scene and disposed of the gun and gloves. In sum, sufficient evidence exists to sustain defendant's conviction of first-degree premeditated murder. *Abraham*, 234 Mich.App at 656.

*Gonzalez*, 2011 WL 4375080 at *3.

The thrust of petitioner's habeas claim is that there was insufficient evidence to prove petitioner's premeditation because Garcia's testimony was inconsistent and unreliable. For example, petitioner states "[t]he litmus for the quality of Garcia's testimony is the false claim, disproved by other evidence, that Petitioner fired 5 or 6 times," that "Garcia thought Villa also shot," that Garcia "repeatedly lied to the police before his version settled on that presented at trial," "that Garcia was desperate for money," that "the events were preceded by a night of drinking alcohol," and "[e]ven assuming petitioner fired, there is an absence of evidence of weighing the pros and cons of shooting at or in the direction of [the decedent] armed with a shotgun." Petitioner's Memorandum at PageID.29. In essence, petitioner wants this Court to perform a *de novo* review of the evidence and determine that Garcia lied about petitioner's involvement in the murder. This is beyond the scope

16

of federal habeas review. "28 U.S.C. § 2254(d) gives federal habeas courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them." *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983).

The Michigan Court of Appeals applied state law regarding the types of evidence that may establish premeditation, and applied the facts as established during the trial. The appellate court's decision was neither contrary to, nor an unreasonable application of, clearly established Federal law as determined by the Supreme Court; nor was the decision based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254 (d). Accordingly, petitioner is not entitled to relief on this claim.

### IV. Recommendation

I respectfully recommend that petitioner's habeas petition be **DENIED**. Rule 8, Rules Governing § 2254 Cases in the United States District Courts.

Dated: February 6, 2017          /s/ Ray Kent
                                 RAY KENT
                                 United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).